UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LORI COURVILLE     CIVIL ACTION

VERSUS

UNITED RENTALS, INC.     NO. 21-00012-BAJ-EWD

## RULING AND ORDER

This is an employment action. Plaintiff alleges that she was fired in retaliation for reporting racial discrimination, in violation of state and federal law. (Doc. 1).

Now before the Court is Defendant United Rentals, Inc.'s **Motion for Summary Judgment (Doc. 27)**. Plaintiff opposes Defendant's Motion. (Doc. 32). For the reasons offered, Defendant's Motion will be denied.

## I. BACKGROUND

### A. Summary Judgment Evidence

The following facts are *undisputed*, as set forth in Defendant's Statement Of Material Facts In Support Of Summary Judgment (Doc. 29, "UR SOF"), Plaintiff's Opposing Statement Of Material Facts (Doc. 33-2, "Opposing SOF"), the parties' Joint Pre-Trial Order (Doc. 34, "Joint PTO"), and the record evidence submitted in support of these pleadings.

Defendant employed Plaintiff as an Internal Sales Representative from August 2015 until her termination on October 31, 2019. (Joint PTO ¶ F(1)). From 2017 until her termination, Plaintiff worked at Defendant's Baton Rouge, Louisiana location (the "Baton Rouge Branch"). (*Id.* ¶ F(2)). Plaintiff is white. (UR SOF ¶ 1; Opposing

SOF ¶ 1).

Although not generally required of her role, beginning in 2017 Plaintiff performed specialized billing for Defendant, in addition to her other job responsibilities. (Joint PTO ¶¶ F(6)-(7)).

In the fall of 2018, Plaintiff raised concerns to Defendant's Branch Manager, Robert Lawrence, regarding Defendant's Service Manager Therence Stutes. (UR SOF ¶ 11; Opposing SOF ¶ 11). Plaintiff does not recall the exact details of this conversation, but nonetheless remembers alleging that many of Stutes' decisions and actions towards Service Technicians within the Service Department were "racially motivated." (UR SOF ¶ 11; Opposing SOF ¶ 11; Doc. 29-1 at p. 84). Lawrence responded by assuring Plaintiff that he "would look into it." (UR SOF ¶ 12; Opposing SOF ¶ 12).

The record does not show what action(s), if any, Lawrence took after this initial conversation with Plaintiff. It is plain, however, that Plaintiff's concerns regarding Stutes were not resolved. Thus, on February 14, 2019, Plaintiff reported Stutes' behavior directly to Human Resources. (UR SOF ¶ 17; Opposing SOF ¶ 17). Specifically, Plaintiff informed HR Generalist Eric Mahoney that Stutes treated Service Technicians differently "based on race," and would frequently refer to African-American Service Technicians as "son" or "boy." (Doc. 29-1 at 88). Plaintiff asked Mahoney "if he could quietly investigate [her] claims of racism at the branch," and further requested that, if "at all possible [he] keep [her] name out of it because [she] was scared of retribution." (*Id.*).

2

Approximately one week later, on February 20, Defendant's District Manager, Michael Sauve, visited the Baton Rouge Branch to investigate Plaintiff's allegations against Stutes. (UR SOF ¶ 18; Opposing SOF ¶ 18). Sauve's investigation included interviewing four African-American Service Technicians. (*Id.*). Notably, by Sauve's his own account, *three* of the Service Technicians' he interviewed substantiated Plaintiff's complaints regarding Stutes, stating (among other things) that Stutes consistently: (1) "lies and does not treat black employees equally compared to white employees"; (2) "racially stereotypes" black employees; (3) refers to black employees as "son" and "boy in front of other employees"; (4) whistles at black employees; (5) "[w]ill allow white men to huddle up and have discussions but immediately breaks up black men when they group up in conversation"; and (6) refuses to assist black employees, rather, when asked for help, gives "excuses and … pushe[s] off." (Doc. 29-2 at p. 12).[1] Ultimately, as a result of Sauve's investigation, Defendant required Stutes to receive diversity, inclusion, and management training. (UR SOF ¶ 21; Opposing SOF ¶ 21[2]).

Significantly, despite her request to Mahoney that her name be "kept out of it," Sauve's investigation also resulted in Plaintiff being summoned for a closed door

---

[1] The fourth Service Technician reported that he "did not feel that black employees were being treated differently," and attributed the incidents above to "tensions" between Stutes and the other Service Technicians. (Doc. 29-2 at p. 12).

[2] Plaintiff "qualifies" this fact, yet fails to cite any evidence to support her qualification. Opposing SOF ¶ 21. Accordingly, under Local Rules 56(d) and 56(f), the Court deems this fact *admitted* as set forth in Defendant's Statement Of Material Facts In Support Of Summary Judgment, due to Plaintiff's failure to properly controvert it. *See N. Frac Proppants, LLC v. Regions Bank, NA*, No. 19-cv-00811, 2022 WL 1297180, at *1 n.1 (M.D. La. Apr. 29, 2022) (defendant's proposed facts deemed admitted as written due to plaintiffs' failure to properly support their "qualified" admissions).

3

meeting with Sauve and Branch Manager Lawrence, in Lawrence's office. (UR SOF ¶ 19-20; Opposing SOF ¶ 19-20). Plaintiff recalls that at this meeting Sauve told her that she "was not in any trouble," but still "scolded" her, saying that he "did not appreciate [her] going over his head and speaking to a kid in HR [Mahoney] that didn't know nothing," and expressing frustration that he was required to conduct an "unfounded and baseless" investigation "against a manager." (Doc. 29-1 at pp. 96-97, 146).

In May 2019, two months after Plaintiff's February meeting with Stutes and Lawrence, Lawrence left his role as Branch Manager of the Baton Rouge Branch, and was replaced by Karen Pesson. (UR SOF ¶¶ 22; Opposing SOF ¶¶ 22). Plaintiff still harbored concerns regarding Stute's treatment of the Service Technicians under his supervision and reported these concerns for a third time in early summer 2019, directly to Pesson. (UR SOF ¶ 23; Opposing SOF ¶ 23). Specifically, Plaintiff told Pesson that she again "observed him [Stutes] speaking to a black tech in the shop referring to him as 'son' and 'boy' and I [Plaintiff] didn't really care for his tone." (Doc. 29-1 at p. 37). Pesson responded by "asking me [Plaintiff] what personal problem I had against Mr. Stutes to make such an accusation." (*Id.* at p. 66).

In September 2019, Sauve conducted an analysis of the Baton Rouge Branch's revenues and expenses, with the goal of "reducing expenses associated with employees." (UR SOF ¶ 33; Opposing SOF ¶ 33[3]). During this review, Sauve

---

[3] Again, Plaintiff "qualifies" this fact yet fails to cite any evidence to support her qualification. Opposing SOF ¶ 33. Accordingly, this fact is also deemed *admitted* as set forth in Defendant's Statement Of Material Facts In Support Of Summary Judgment. *See supra*, n.2.

4

ostensibly determined that Plaintiff's position was redundant because two more senior employees with expertise in specialized billing were recently transferred from Defendant's corporate headquarters to "the region encompassing New Orleans and Baton Rouge." (UR SOF ¶¶ 29-30, 34; Opposing SOF ¶¶ 29-30, 34[4]). Sauve reached this determination despite Plaintiff being an Internal Sales Representative whose general job responsibilities did *not* include specialized billing. (Joint PTO ¶ F(1)). Additionally, Sauve determined that Plaintiff was expendable despite Plaintiff's most recent (August 26, 2019) performance review rating her "On Target," and including the following Manger Comments:

> Lori [Plaintiff] is good at what she does and has a way of explaining to customers what is needed to perform her duties. She takes her job to heart and wants UR to collect the funds that are owed. She likes to accomplish goals and enjoys being recognized for her accomplishments.

(Doc. 32-5 at p. 3).

On October 31, 2019, Sauve and Pesson met with Plaintiff and advised her that her position had been eliminated and that she was no longer needed. (UR SOF ¶ 38; Opposing SOF ¶38).

### B. Procedural History

Following her termination, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and obtained a right-to-sue letter. (Doc. 1 at ¶¶ 11-12). Thereafter, on January 6, 2021, Plaintiff initiated this action, alleging claims of retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), and their

---

[4] Again, these facts are deemed *admitted. See supra,* n.2.

5

Louisiana law counterparts. (*Id.* at ¶¶ 24-37).

Now Defendant moves for summary judgment, arguing that Plaintiff cannot succeed in her claims, primarily because she cannot establish "a causal connection between her reports of alleged race discrimination and the elimination of her position." (Doc. 28 at p. 2). Plaintiff opposes Defendant's Motion. (Doc. 32-1).

## II. LAW AND ANALYSIS

### A. Standard

Federal Rule of Civil Procedure ("Rule") 56(a) provides that the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant bears its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587. Stated differently, "[i]f the party with the burden of proof cannot produce any summary judgment evidence on an essential element of [her] claim, summary judgment is required." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).

### B. Discussion

Plaintiff contends that she was unlawfully fired for having repeatedly raised concerns regarding Stutes' discriminatory treatment of African American Service Technicians. In relevant part, the employment statutes prohibit an employer from punishing an employee for having opposed, complained of, or participated in an

6

investigation into unlawful workplace conduct, such as harassment and/or discrimination. *See* 42 U.S.C.A. § 2000e-3(a).[5] Here, Plaintiff lacks direct evidence that she was fired because she protested Stutes' behavior—*i.e.*, a "statement or written document showing [an unlawful] motive on its face." *See Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994). Accordingly, the Court reviews Plaintiff's claim under the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*. *See Robinson v. Jackson State Univ.*, 714 F. App'x 354, 359 (5th Cir. 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

"The first step of the *McDonnell Douglas* analysis requires the plaintiff to establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor." *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012) (quotation marks and alterations omitted). If the plaintiff establishes a prima facie case, the Court proceeds to the next stage of the analysis, where "the defendant bears the burden of producing evidence that its employment

---

[5] Despite seeking relief under two federal statutes (Title VII and Section 1981) and one state statute (the LEDL), the analysis of Plaintiff's claims is the same. This is for two reasons.

First, "retaliation claims under § 1981 and Title VII are parallel causes of action," meaning that they "require proof of the same elements in order to establish liability." *Johnson v. Halstead*, 916 F.3d 410, 420 (5th Cir. 2019) (quotation marks and alterations omitted).

Second, while Louisiana's employment statutes technically do not recognize a claim of straight retaliation, and instead prohibit employers only from "conspiring to retaliate," *see* La. R.S. § 51:2256, *Glover v. Smith*, 478 Fed. Appx. 236, 244 (5th Cir. 2012), here the distinction is without difference because Plaintiff's termination resulted from the joint action of Sauve and Pesson. Thus, in effect, the same legal analysis applicable to Plaintiff's federal claims is applicable to Plaintiff's state law claim. *See La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 477 (5th Cir. 2002) ("Because the [LEDL] is substantively similar to title VII, the outcome will be the same under the federal and state statutes." (quotation marks omitted)).

decision was based on a legitimate nondiscriminatory reason." *Id.* (quotation marks omitted). If the defendant meets its burden of production, "the burden shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination." *Id.* (quotation marks and alterations omitted).

### i. Prima facie case

To establish a prima facie case of retaliation, Plaintiff must show (1) that she "engaged in protected activity"; (2) that she "suffered from an adverse employment action"; and (3) "a causal connection between the activity and the adverse employment decision." *Robinson*, 714 F. App'x at 359.

### a. Protected Activity

An employee who raises an internal complaint of discrimination (or participates in an investigation of the same) engages in a protected activity. *See Willis v. Napolitano*, 986 F. Supp. 2d 738, 748 (M.D. La. 2013) ("While opposition to discrimination need not be in formal written form, internal complaints must reference discrimination or other unlawful employment activity in order to be protected."), *aff'd sub nom. Willis v. U.S.*, 576 F. App'x 340 (5th Cir. 2014). Here, Plaintiff engaged in protected activities when she raised her complaints regarding Stutes' discriminatory treatment of African American Service Technicians to Branch Manager Robert Lawrence (in fall of 2018), HR Generalist Eric Mahoney (in February 2019), *and* to Branch Manager Karen Pesson (in summer of 2019). Additionally, Plaintiff engaged in a protected activity when she participated in District Manager Michael Sauve's investigation of Stutes (in February 2019). Accordingly, Plaintiff has established the first prong of her prima facie case.

8

### b. Adverse Employment Action

Termination is an adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) ("We have historically held that, for all Title VII claims, '[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'"). Plaintiff was terminated from her position in October 2019. (Doc. 1, ¶13). Thus, Plaintiff has satisfied the second prong of her prima facie case.

### c. Causal Link

To meet the third prong, Plaintiff must provide sufficient evidence that her reports of racial discrimination to Lawrence, Mahoney, and Pesson, and/or her participation in Sauve's investigation caused her termination. *Willis*, 986 F. Supp. 2d at 748 (citing *Finnie v. Lee Cty., Miss.*, 541 F. App'x 368, 371–72 (5th Cir. 2013)). Such evidence may include "temporal proximity" between Plaintiff's protected activities and her termination. *Deeds v. State Farm Mut. Auto. Ins. Co.*, No. CIV.A. 10-142, 2012 WL 1150755, at *9 (M.D. La. Apr. 5, 2012). Standing alone, however, "temporal proximity ... is insufficient to prove but for causation." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)

Sauve and Pesson terminated Plaintiff on October 31, 2019, less than four months after Plaintiff raised her final complaint regarding Stutes to Pesson. By Defendant's own admission, however, Sauve laid the groundwork to fire Plaintiff at least one month earlier—in September 2019—upon determining that he had two additional employees capable of performing specialized billing services. Significantly, at the time he made his decision to eliminate Plaintiff's role, Plaintiff's official job

responsibilities *did not include* specialized billing. Moreover, Plaintiff's most recent performance review was stellar, stating that Plaintiff was "On Target," "good at what she does," capable of "explaining to customers what is needed to perform her duties," and committed to her role and to the company. Finally, and importantly, the record shows that Sauve and Pesson had *each* reacted negatively to Plaintiff's prior reports of Stutes' discrimination. Sauve, for his part, "scolded" Plaintiff, told her that he "did not appreciate [her] going over his head," and expressed frustration regarding her "unfounded and baseless" accusations (despite later substantiating Plaintiff's reports). Pesson, for her part, responded to Plaintiff's reports by asking "what personal problem [Plaintiff] had against Mr. Stutes to make such an accusation."

In sum, the summary judgment evidence shows that Plaintiff raised substantiated concerns of racial discrimination, was performing well at her job (even taking on additional responsibilities), and was fired by two individuals that had previously expressed hostility towards her complaints, just months after she raised her concerns for the final time. On this record, Plaintiff has carried her burden of showing a genuine dispute of material fact regarding whether her protected activities were the but for cause of her termination.

### ii. Non-retaliatory Reason

Having proved her prima facie case, the burden shifts to Defendant to show that Plaintiff's termination was based on a legitimate nondiscriminatory reason. Certainly, eliminating redundancy and reducing payroll expenses are legitimate motivations for terminating an employee.

### iii. Pretext

Thus, the burden shifts back to Plaintiff to show that Defendant's proffered reason—redundancy—is a pretext for its actual discriminatory or retaliatory purpose. *Moore v. United Parcel Serv. Co. of Delaware*, No. 11-CV-00619-SDD-RLB, 2013 WL 3821464, at *4 (M.D. La. July 23, 2013). "Once a Title VII case reaches the pretext stage of the analysis, the only question remaining is whether there is a conflict in substantial evidence to create a question for the fact-finder." *Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864, 875 (M.D. La. 2014), *aff'd sub nom. Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 620 F. App'x 215 (5th Cir. 2015).

Here, again, Plaintiff carries her burden, essentially for the same reasons set forth above regarding "but for" cause. Ostensibly, Sauve and Pesson fired Plaintiff because Defendant had two other employees performing specialized billing services. Yet, Plaintiff's official job responsibilities did *not* include specialized billing services; that she performed such work was lagniappe. And, again, Plaintiff had just received a glowing performance review, suggesting that if redundancy was a true motivator she should *not* have been fired in favor of two billing specialists, but instead should been *retained* in favor of a lower-performing Internal Sales Representative. Finally, the fact that each of the decisionmakers responsible for Plaintiff's termination—Sauve and Pesson—had previously expressed hostility towards Plaintiff's protected activities cannot be ignored.

In sum, Plaintiff has again established a genuine dispute that cannot be decided at this stage and must be submitted to the jury.

11

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 27) be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 27th day of May, 2022

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**